(No. 27433.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR BERNE *et al.,* Plaintiffs in Error.

*Opinion filed November 16, 1943.*

KARNS & BANDY, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and LOUIS P. ZERWECK, State's Attorney, for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, Arthur Berne and William Donovan, were convicted in the city court of East St. Louis, on a trial before a jury, of the crime of robbery committed on December 18, 1942. They were indicted jointly with one John Doe, a third person, who was never apprehended.

The evidence shows that December 18, 1942, three armed men with their faces concealed by handkerchiefs, entered the tavern of one Zaluska, and in addition to taking money from some of the customers present, robbed Zaluska of over $7000. No claim is advanced that the robbery was not committed. The contentions are that plaintiffs in error were not identified as the robbers, that they established that at the time of the crime they were elsewhere, and that the jury was improperly instructed.

The tavern of Zaluska was located at the corner of Sixth street and Summit avenue in the city of East St. Louis. It had a front and rear entrance, and there was a bar extending the full length of the room. Zaluska had a safe on the second floor in which he kept a large amount of money to take care of pay checks of men working in the neighboring factories. In the afternoon about four o'clock three men entered the tavern, one going through the front door and the others through the rear door. Zaluska had just brought some money from the safe and emptied it on the bar to cash a pay check of a customer. The robbers commanded the customers, Zaluska and the bartender to line up against the wall and raise their hands. They took the money that was on the bar and searched the cash register, and then forced the bartender to go upstairs and open the safe, from which approximately $7000 was taken. There were eight or nine customers in the room.

All of the witnesses for the People testified that while the robbery was being committed the robbers' faces were covered with handkerchiefs from their eyes to their chins,

with caps pulled down over their eyes. Of all of the persons present in the tavern only five of them identified plaintiffs in error. Two of these witnesses identified Berne, and two Donovan, and Zaluska, the proprietor, undertook to identify both of the defendants. The sufficiency of the identification of plaintiffs in error by these witnesses is vigorously contested. The identification of Berne was made after the robbery had been completed and after he left the rear door, when it was said he took the handkerchief from his face. The identification of Donovan was made inside of the tavern, according to one witness, while he was wiping his face with his handkerchief; according to another while he was raising the handkerchief to his face, and a third by seeing the side of his face. None of the identifying witnesses knew either of the plaintiffs in error, or had ever seen them before.

The defendants both testified. Donovan claimed he was operating his own tavern in the city of St. Louis at the time of the robbery. Berne claimed he was attending a birthday party of his brother-in-law in the city of St. Louis. Both defendants were supported in this alibi by their respective wives as well as other witnesses. As affecting their credibility the People proved on rebuttal that each of the defendants had previously been convicted of a felony. Owing to the fact the opportunity for the identification of the robbers was limited, as well as the testimony of apparently disinterested witnesses to the alibi, the case was a close one on the evidence.

The rulings of the court on the question of identification and alibi are questioned by plaintiffs in error. One of the witnesses who identified Berne did so in the police station in St. Louis. He testified he was called over there and had Berne pointed out to him, and recognized him as one of the robbers. Berne was not placed among other persons unknown to the witness for the purpose of requiring the witnesses to pick out and identify the defend-

ant, as we have said is the correct practice in such cases. (*People* v. *DeSuno*, 354 Ill. 387; *People* v. *Crane*, 302 Ill. 217.) But these cases hold the fact that the identification was made in the manner shown in this case does not destroy its competency as evidence, but only goes to its weight. In the case of Donovan a witness by the name of Tucker was produced to prove the alibi. Tucker was employed as a bartender by Donovan. He offered to testify he had worked as a bartender since December 1st, and worked every Friday, and it was on those days Donovan was always present to cash the checks of workingmen, but upon the objection of the People the court refused to permit him to answer any question except as to whether Donovan was present on the eighteenth. The other witnesses, aside from Donovan's wife, fixed the day on the eighteenth, but on cross-examination could not say where such defendant was on the seventeenth or other dates.

It seems to us that Tucker's testimony should have been admitted. It is a matter of common knowledge that a witness may fix the presence of a person by an occurrence much more readily and with much more certainty than by the recollection of a specific date. The robbery occurred Friday, December 18, and Tucker was not willing to testify he remembered the date as being December 18, but the offer was made he would testify Donovan was present every Friday during the month of December, fixing such day from the practice of cashing workmen's checks, which was done by Donovan himself. The difficulties attending identification, and the action of the court in thus limiting the testimony of Tucker would not perhaps in themselves justify a reversal, but it does render the facts so close that it requires accurate instructions to the jury upon the part of the court.

Four instructions were given by the People, which are claimed to constitute reversible error. Instruction 12 was a cautionary instruction upon the credibility to be given

any witness, and instruction 13 upon the credibility to be given the defendants' testimony. Each of these instructions concluded with telling the jury that if the witness or the accused had wilfully and corruptly testified falsely to any fact material to the issue in this case, it had the right to entirely disregard his testimony, except in so far as it is corroborated by other credible evidence, facts and circumstances.

Instructions 14 and 15 were upon the question of the reasonable doubt that would authorize the defendants' acquittal. Instruction 14, after advising the jury that it is not necessary that it believe every incriminating fact had been proved beyond a reasonable doubt, concluded "it is sufficient if the jury believe from the evidence in the case that every material allegation in the indictment, in manner and form as herein charged, has been proven beyond a reasonable doubt." Instruction 15 was another instruction upon reasonable doubt, which concluded as follows: "The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole of the evidence and not as to any particular fact in the case not necessary to constitute the crime charged." The vice of these instructions lies in the fact it is left to the jury to determine what are the material allegations in the indictment, or what are the particular facts necessary to constitute the crime charged.

To establish the guilt of the plaintiffs in error in this case it was necessary to prove not only that a crime had been committed, but also to establish beyond a reasonable doubt that the defendants were the persons who committed the crime. (*People* v. *Peck,* 358 Ill. 642; *People* v. *Fiorita,* 339 Ill. 78; *People* v. *O'Hara,* 332 Ill. 436.) This issue included not only a proper identification of defendants as the robbers, but also included the issue presented by the proof of an alibi.

Instruction 15 has been condemned in a long line of cases commencing with *People* v. *Seff,* 296 Ill. 120. The latest pronouncement called to our attention is *People* v. *Wells,* 380 Ill. 347, where we said: "Undoubtedly the rule is that where this instruction is given, other instructions should be given defining the issues, so as not to throw the burden on the jury of ascertaining what are and what are not material issues of fact. Such an instruction has been many times condemned and held to be improper as it leaves the jury to determine the legal question as to what are material facts or essential elements of the crime charged. It has been held, however, not to constitute reversible error to give such instruction where other instructions given in the case define the essential elements of the crime with which the defendant was charged. [Citations.] It does not appear in the instant case that other instructions are sufficiently set forth to apprise the jury what are and what are not material issues of facts. The only thing we could find in the record was an instruction as to forgery, which only presented an abstract proposition of law. This instruction has been repeatedly condemned and, by the weight of authority, it is improper." *People* v. *Flynn,* 378 Ill. 351; *People* v. *Johnson,* 317 Ill. 430; *People* v. *Rongetti,* 331 Ill. 581; *People* v. *Hartwell,* 341 Ill. 155.

In addition to the foregoing cases such an instruction has been condemned in *People* v. *Cramer,* 298 Ill. 509; *People* v. *Davis,* 300 Ill. 226; *People* v. *Clark,* 301 Ill. 428; *People* v. *Prall,* 314 Ill. 518; *People* v. *Mooney,* 303 Ill. 469; *People* v. *Birger,* 329 Ill. 352; *People* v. *Mc-Grane,* 336 Ill. 404; *People* v. *Rukavina,* 338 Ill. 128, and *People* v. *Allen,* 378 Ill. 164. That such an instruction is erroneous has been consistently followed since the rule was first announced. This line of cases applies to both instructions 14 and 15. The rule is not so uniform with respect to instructions 12 and 13. It is true that in *People* v.

*Flynn,* 378 Ill. 351, the rule was applied to an instruction of like character, but there was also present in that case an improper instruction of the type represented by instruction 15. It is thoroughly established it is reversible error to give instructions which tell the jury it may consider proof of guilt established beyond reasonable doubt if the jury believes the material allegations in the indictment have been proved, unless there is an instruction defining the material allegations of the indictment, or the material facts presented by the issues.

Instructions 12 and 13 are cautionary in character and relate only to the weight that may be given to a witness who has testified falsely with respect to any material issue in the case. Such an instruction is not as harmful as one leaving to the jury the determination of the issues necessary to convict or acquit. Cautionary instructions do not authorize direct verdicts but merely direct attention to the weight to be given the testimony of a witness. Doubtless it would be a far better and sounder practice not to give such an instruction on the credibility of a witness, unless the material issues or point in controversy are defined by other instructions given by the court. There were no instructions given in this case defining the material issues.

It is contended by the People that an instruction given which defined the crime of robbery was sufficient to define the material issues in the case, but the case of *People* v. *Cramer,* 298 Ill. 509, as well as *People* v. *Wells,* 380 Ill. 347, hold that such an instruction is a mere abstract statement of the law and not sufficient to point out the material issues to be determined by the jury. The cases cited by the People do not sustain the claim that the instructions objected to were proper.

In *People* v. *Pursley,* 302 Ill. 62, an instruction similar to No. 12, applying to the credibility of witnesses, was given, but as the case was reversed on other grounds the

question of leaving it to the jury to determine the material issues involved was not discussed. In *People* v. *Jones,* 312 Ill. 190, the instructions complained of applied to the credibility of the accused and of other witnesses, but an instruction was given on behalf of the defendant covering the same question, which limited the jury to considering material *facts,* which was held to adequately protect the rights of the accused. In *People* v. *Steinkraus,* 291 Ill. 283, the instruction was of the same type as instructions 14 and 15 in this case, and instead of approving such instruction the court criticized it, but decided the error was harmless. It is to be observed, however, the *Steinkraus case* was decided before the line of cases commencing with *People* v. *Seff,* 296 Ill. 120, had been announced, and therefore may be considered overruled by the later cases holding instructions leaving it to the jury to determine the material issues in the case are improper. The remaining case cited, *People* v. *Franklin,* 341 Ill. 499, does not approve instruction 15. It points out such an instruction was condemned in *People* v. *Clark,* 301 Ill. 428, but that the one there under consideration related to particular facts not a part of the crime, and therefore it was harmless, as it did not submit to the jury the determination of a material issue in the case.

The defendant in error contends instruction 14 is not erroneous because in the first part of it it tells the jury that it is not necessary for it to believe every incriminating fact or circumstance was proved beyond a reasonable doubt. If it had stopped there it would have been in accord with what we said in the *Steinkraus case,* but the instruction concluded with language authorizing the jury to convict if it believed "every material allegation in the indictment" had been proved beyond reasonable doubt, which left it to the jury to determine which issues or allegations in the indictment were material in the case, and was clearly erroneous.

Instructions 14 and 15 left it to the jury to determine issues of law, and like instructions have been many times condemned and held to be reversible error. We have never held the giving of instructions upon the credibility of witnesses, of the type of instructions 12 and 13, is of itself reversible error, although such instructions have been frequently criticized, especially when given in connection with such of the same type as Nos. 14 and 15. While there is a distinction between what facts are material to an issue in an indictment and those material to the testimony given by a witness, there is no question but what instructions of the first type are erroneous, and those of the latter character subject to criticism and are erroneous when taken in connection with other instructions.

There were no other instructions given in the case upon the question of reasonable doubt, and we have many times held, as we have said in *People* v. *Cramer,* 298 Ill. 509: "It is not correct to say that a reasonable doubt as to any particular fact in the case is not sufficient to justify an acquittal, without distinguishing between facts which are material and constitute a necessary element of the crime and those which are not so material and necessary." In *People* v. *Clark,* 301 Ill. 428, in commenting upon the giving of instructions of the type given in this case we said: "This instruction has been repeatedly condemned by this court [citations], and it seems strange that the practice of giving the instruction should not be discontinued * * *." It would seem that this admonition has been generally overlooked.

The judgment of the city court of East St. Louis is reversed because of the errors pointed out herein, and the cause remanded to such court for a new trial.

*Reversed and remanded.*